# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| REV GERALD KINER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02628-TLP-tmp |
| v. | ) | |
| | ) | |
| SHELBY COUNTY GOVERNMENT, | ) | |
| VERONICA BROWN, in her official | ) | |
| capacity and individual capacity, and | ) | |
| TERRICE MAY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND DISMISSING CASE

Plaintiff Reverend Gerald Kiner asserts that his local government breached a contract him because he expressed critical views about its contract awarding process.  So in September 2024, he sued Defendants Shelby County Government ("Shelby County" or "County") and the individuals he wants to hold accountable for that breach of contract—Veronica Brown, and Terrice May.  (ECF No. 1.)  Plaintiff brings claims for First Amendment retaliation and intentional infliction of emotional distress, both under 28 U.S.C. § 1983, as well as breach of contract.  (ECF No. 61.)

Defendants now move for partial judgment on the pleadings.  (ECF No. 82.)  They ask the Court to dismiss the § 1983 claims and not to exercise supplemental jurisdiction over the remaining state-law claim.  (ECF No. 82-1 at PageID 722.)  Plaintiff responded.  (ECF No. 83.)  Defendants replied.  (ECF No. 84.)  And for the reasons below, the Court **GRANTS** Defendants'

Motion, **DISMISSES** Plaintiff's § 1983 claims **WITH PREJUDICE**, and **DISMISSES**

Plaintiff's breach of contract claim **WITHOUT PREJUDICE**.

## BACKGROUND

Plaintiff sued pro se but later retained counsel.  The facts below are taken from his

Amended Complaint ("Complaint").  (*See* ECF No. 61.)  On June 6, 2024, Plaintiff, as Director

of Daughters of Zion, signed a contract with Shelby County.  (*Id.* at PageID 623.)  In exchange

for Plaintiff providing the County with violence intervention and prevention services, the County

agreed to pay him no more than $249,500.00 for his services, plus all reimbursable expenses.

(*Id.*)  The contract began immediately and ran through the rest of the month.  (*Id.*)  The contract

also included a renewal option.  (*Id.*)

About a week later, Plaintiff attended a public meeting of the Shelby County

Commission.[1]  (*Id.* at PageID 624.)  There, he made "public statements concerning his belief that

Shelby County's contract awards favor insiders who seem to possess knowledge of amounts of

government grants."  (*Id.*)  He also "questioned the fairness of the process and called attention to

systemic issues faced by minorities in the bidding process, the lack of transparency,

discrimination, and procedural violations."  (*Id.*)  Deputy Director Travis Green—who is not

named in this lawsuit—responded that "[e]verything [Plaintiff] said is a lie" and that

"[i]ndividuals who make statements like this should be held accountable." (*Id.*)

By June 30, 2024, Plaintiff "completed services under the contract with supporting

documents totaling $93,656.00."  (ECF No. 61 at PageID 624.)  He then mailed an invoice to

"Terrice May, Defendant's Administrator for Population Health, and Shelby County

---

[1] Defendants ask the Court to take judicial notice of a public recording from that meeting.  (ECF
No. 82-1 at PageID 714.)  *See* Fed. R. Evid. 201(a).  But the Court need not do so to decide the
issues here.

2

Government" a few days later demanding payment. (*Id.*) She apparently did not respond. So on

July 17, 2024, Plaintiff tried to reach several Shelby County Commissioners "seeking assistance

with his contractual concerns." (*Id.*) But they did not respond. (*Id.*) So he forwarded an ethics

complaint to the Commissioners and County Attorney. (*Id.*) Also between late-July and mid-

August 2024, Plaintiff tried to contact Veronica Brown many times about the outstanding

payment and the possibility of renewing the contract. (*Id.* at PageID 625.) But she did not

respond. (*Id.*)

Plaintiff eventually got through to Shelby County Commissioner Brittany Thorton. (*Id.*)

He spoke with her on August 15, 2024, "about monies owed to Plaintiff as Director of Daughters

of Zion" and raised his concern that Brown "retaliated against him for a defamation lawsuit

against Deputy Director Green."[2] (*Id.*) Veronica Brown reached Plaintiff the next day. (*Id.* at

PageID 626.) She acknowledged "Defendants' receipt of Plaintiff's emails and invoices and

committed to following up with Plaintiff no later than August 30, 2024." (*Id.*) But she did not

follow up with him until after that date. (*Id.*) And when she did, Brown "claim[ed] that

Daughters of Zion's budget was not approved." (*Id.*)

"Suspecting deceit," Plaintiff then made a Freedom of Information Act ("FOIA") request

for communications related to the service contract. (*Id.*) He later found out from the Tennessee

Department of Finance and Administration that "invoices submitted after July 19, 2024, could

not be processed without a previously submitted accrual liability form." (*Id.*) This led to

---

[2] Plaintiff sued Deputy Director Green and the Shelby County Health Department over these
statements. (*See* ECF No. 61 at PageID 625.) *See Kiner v. Shelby Cnty. Health Dept.*, 2:24-cv-
02412-TLP-cgc (W.D. Tenn.). And the Parties argue over how whether that lawsuit has
preclusive effect here. (ECF No. 82-1 at PageID 720–21; ECF No. 83 at PageID 734.) But that
case is still pending. So the Court does not consider Defendants' issue and claim preclusion
arguments.

Plaintiff complaining to District Attorney Steve Mulroy that Brown failed to "perform her

official duties." (*Id.*) Plaintiff later received documents from his FOIA request that "showed a

concerted effort by Defendants to hide its reckless failure to submit necessary documents for

payment to Plaintiff under the contract." (*Id.* at PageID 626–27.)

Because of all this, Plaintiff sued here for First Amendment retaliation,[3] intentional

infliction of emotional distress, and breach of contract. (*Id.* at PageID 628–32.) He alleges that

he "engaged in constitutionally protected free speech at the County Commissioners meeting."

(*Id.* at PageID 628.) And that "Defendants infringed on Plaintiff's constitutional rights, which

directly and proximately resulted in, among other damages, actual damages of $93,656 and the

benefit of the funds remaining under the $249,000 grant because of its retaliatory failure to pay

and renew Plaintiff's contract." (*Id.*) He also contends that Brown's "intentional, malicious, and

---

[3] Plaintiff's "First Claim of Relief" under § 1983 is for "Violation of the First and Fourteenth
Amendments of the U.S. Constitution. (ECF No. 61 at PageID 628.) And he explains his public
comments "constituted an exercise of his free speech as guaranteed under the First and
Fourteenth Amendments." (*Id.* at PageID 629.) But he also claims that Shelby County's
retaliatory "pattern and practice" "subject[s] [him] to unequal and retaliatory treatment in
violation of the Equal Protection Clause of the Fourteenth Amendment in its disparate treatment
of him and similarly situated vendors with less comprehensive bids." (*Id.* at PageID 629–30.)
He further states that two other organizations were selected despite offering "less comprehensive
bids." (*Id.* at PageID 630.) Beyond these isolated statements, Plaintiff's Complaint and does not
hint at an equal protection claim—he consistently relates his § 1983 claim to First Amendment
retaliation. And his response to Defendants' § 1983 arguments never mentions equal protection.
So the Court construes Plaintiff's statement about equal protection as part of his *Monell* claim
under the First Amendment; not a standalone equal protection claim. *See Humphrey v. United
States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that where a
"plaintiff has not raised arguments in the district court by virtue of his failure to oppose
defendants' motions to dismiss, the arguments have been waived"). And even if Plaintiff
intended to assert a standalone equal protection violation, these allegations are far too conclusory
to state a claim. *See Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013) (explaining
that the motion-to-dismiss standard accepts allegations as true but does not accept "conclusory
legal allegations that do not include specific facts necessary to establish the cause of action"
(citation omitted)).

. . . reckless" conduct "caused Plaintiff to suffer grave emotional distress."  (*Id.* at PageID 631–32.)

Defendants now move for partial judgment on the pleadings.  (ECF No. 82.)  They argue that Plaintiff fails to state a § 1983 claim for First Amendment retaliation or intentional infliction of emotional distress.  (ECF No. 82-1 at PageID 715, 721.)  And if the Court agrees, Defendants also ask the Court not to exercise supplemental jurisdiction over the remaining breach of contract claim.  (*Id.* at PageID 722.)

## LEGAL STANDARD

Courts may grant a Rule 12(c) motion for judgment on the pleadings only if the moving party is "clearly entitled to judgment."  *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)).  And the familiar Rule 12(b)(6) motion-to-dismiss standard guides that determination.  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  Timing is the only difference between the two motions—a party can only move under Rule 12(c) if they do so "early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Plaintiff does not dispute that Defendants' Motion is timely here.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  So a court does not consider whether a plaintiff will succeed on the merits.  *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 659 F. Supp. 3d 546, 557 (E.D. Tenn. 2019).  Rather it considers whether the facts suggest "more than the mere possibility of misconduct."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  This standard requires a court to "construe the complaint in the light most favorable to the plaintiff . . . and draw all reasonable inferences in favor of the plaintiff."

*Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022), *cert. denied*, 214 L Ed. 2d 253

(2022) (citation omitted). But the Court need not accept "legal conclusions or unwarranted

factual inferences." *Moderwell*, 997 F.3d at 659 (quoting *Jackson*, 864 F.3d at 466). Rather,

"the complaint must contain direct or inferential allegations respecting all the material elements

under some viable legal theory." *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019)

(quotation omitted).

## ANALYSIS

Although Defendants' Motion for Judgment on the pleadings is "partial," it seeks to

dismiss each claim in the Complaint. That is because if the Court dismisses Plaintiff's § 1983

claims—First Amendment retaliation and intentional infliction of emotional distress—

Defendants then ask the Court not to exercise supplemental jurisdiction over the remaining

breach of contract claim. Because the First Amendment claim is all but dispositive here, the

Court addresses it first.

### I.    First Amendment Retaliation

Plaintiff sues Defendants under 42 U.S.C. § 1983 alleging First Amendment retaliation.

(ECF No. 61 at PageID 629.) In their individual capacity, Defendants Brown and May assert

qualified-immunity defenses. (ECF No. 82-1 at PageID 720.) And Shelby County argues that

Plaintiff fails to make a valid claim of *Monell* liability. (*Id.* at PageID 718.) The Court considers

each in turn.

#### A.    Qualified Immunity

Qualified immunity shields government officials who performed discretionary functions

from civil liability. *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024) (citation omitted).

But that immunity extends only to those officials whose actions or inactions did not violate a

plaintiff's "clearly established [constitutional] rights." *Id.* And although raised by a defendant, the plaintiff "bears the burden of showing that a defendant is not entitled to qualified immunity." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2013).

But that burden is not high at this early stage of litigation. *Id.* The Court reads the Complaint in the light most favorable to Plaintiff and accepts his factual allegations as true. *See Hart v. Hillside Cnty., Michigan*, 973 F.3d 627, 632 (6th Cir. 2020). Which is why the Sixth Circuit routinely notes that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Chrestman ex rel. Wooden v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 156 F.4th 694, 701 (6th Cir. 2025) (quoting *Anders*, 984 F.3d at 1175); *see, e.g.*, *MacIntosh*, 69 F.4th at 315.

Plaintiff must show three things to make a prima facie case of First Amendment retaliation. *See DeLanis v. Metro. Gov't of Nashville & Davidson Cnty.*, 160 F.4th 732, 742 (6th Cir. 2025) (citation omitted). He must plausibly allege that (1) he engaged in protected speech; (2) "he suffered an 'adverse action' that would 'dissuade individuals of ordinary firmness from doing what they were doing'"; and (3) "he must allege a 'causal link' between his protected speech and the adverse action." *Id.* (quoting *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022)).

And he must allege these elements as to each Defendant. *See Rideout v. Shelby Twp.*, 691 F. Supp. 3d 816, 825 (E.D. Mich. 2023) ("To prevail on a § 1983 claim, a plaintiff must show personal involvement by the defendant in the constitutional violation." (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691–92 (1978); *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995)). For Brown and May, the facts related to protected conduct and adverse

7

action overlap, so the Court considers both together.  But the Court considers causation

individually.

### 1.    Protected Conduct and Adverse Action

The First Amendment "prohibits the government from 'abridging the freedom of

speech.'"  *Josephson*, 115 F.4th at 783 (quoting U.S. Const. amend. I); *see Stromberg v.*

*California*, 283 U.S. 359, 368 (1931) ("It has been determined that the conception of liberty

under the due process clause of the Fourteenth Amendment embraces the right of free speech."

(citations omitted).  And of course, "'as a general matter the First Amendment prohibits

government officials from subjecting an individual to retaliatory actions' for engaging in

protected speech."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation omitted).

Plaintiff engaged in protected conduct when he "criticized the discriminatory awarding of

contracts" at the June 12, 2024, County Commissioner's meeting.  (ECF No. 61 at PageID 628–

29.)  Defendants do not dispute this element.  Nor can they—the First Amendment protects

Plaintiff's public speech at a public meeting.[4]  *See, e.g.*, *Fritz v. Charter Twp. of Comstock*, 592

F.3d 718, 723 (6th Cir. 2010).

Now to adverse action.  Plaintiff argues that Defendants retaliated against him both by

failing to pay him the money he earned under the contract and by declining to renew his contract.

(ECF No. 61 at PageID 629.)  Yet Defendants contend that "a simple breach of contract does not

---

[4] Defendants do not address whether the Court should use the *Pickering-Connick* framework to
evaluate Plaintiff's speech.  *See generally Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 294
n.2 (6th Cir. 2012) ("The Supreme Court has clearly established that First Amendment
protections extend to independent contractors hired by the state.").  And because Defendants
failed to raise the issue, the Court will not engage in that analysis.  *Cf. DeLanis*, 160 F.4th at 742
(declining to address "free-speech complications" because the defendants did not deny that the
plaintiff "engaged in protected speech").

rise to the level of a constitutional violation." (ECF No. 82-1 at PageID 717.) In other words,

Plaintiff's retaliation claim is just a breach of contract. Plaintiff counters that "breach of contract

is the *damage*, and the gravamen of the complaint is the § 1983 First Amendment retaliation."

(ECF No. 83 at PageID 730 (emphasis added).)

Defendants back up their framing with a few citations. To be sure, "it is well established

in the Sixth Circuit that a simple breach of contract does not rise to the level of a constitutional

violation." *Env't & Tech. Controls, Inc. v. City of Detroit*, No. 04-73528, 2005 WL 1684140, at

\*3 (E.D. Mich. July 19, 2005) (citation omitted) (due process claim); *see Charlie's Towing &*

*Recovery, Inc. v. Jefferson Cnty.*, Ky., 183 F.3d 524, 527 n.3 (6th Cir. 1999) (due process claim)

("Even if plaintiffs could prove a breach of contract, a simple breach of contract does not rise to

the level of a constitutional violation." (citing *Med. Laundry Servs. v. Bd. of Trs. of Univ. of*

*Alabama*, 906 F.2d 571, 573 (11th Cir. 1990)); *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844

F.2d 1268, 1273 (6th Cir. 1988) (due process claim) (reasoning that adequate state law remedies

"bar a section 1983 action when the deprivation is a simple breach of contract and there is

adequate state breach of contract action available as a remedy").

That rule, however, is cabined to due process cases. *See, e.g.*, *id.* (due process); *Env't &*

*Tech. Controls, Inc.*, 2005 WL 1684140 (due process); *Charlie's Towing & Recovery, Inc.*, 183

F.3d 524 (due process). And applying this rule in the procedural-due-process context makes

sense because "the state common law of contracts creates the property interest at stake and that

same law determines what remedy lies for the deprivation caused by the breach of the contract."

*Ramsey*, 844 F.2d at 1273; *see Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826,

831 (6th Cir. 2009) (applying similar reasoning to a due process claim). Yet Plaintiff did not

bring a due process claim here. Rather he argues that Defendants retaliated against him for

exercising his First Amendment right.  And unlike a procedural due process claim, the federal

constitution creates Plaintiff's First Amendment right and the remedy does not rely on state law.

Defendants have not cited—and the Court has not found—any Sixth Circuit precedent

precluding First Amendment claims on similar grounds.

So the question remains whether Plaintiff has plausibly alleged an adverse action severe

enough to deter "a person of ordinary firmness" from making critical comments at a county

commission meeting.  *See, e.g.*, *MacIntosh*, 69 F.4th at 316.  And the answer is "yes."  Declining

to renew a contract is a classic example of adverse action.  *See, e.g.*, *Josephson*, 115 F.4th at 787.

What is more, the Sixth Circuit has reasoned that "[a] person of ordinary firmness would be

deterred from engaging in protected conduct, if as a result, a public official encouraged her

employer to terminate the person's contract or to have her change her behavior."  *Fritz*, 592 F.3d

at 726.  It follows then that failing to pay an invoice of $93,656.00 would deter a person of

ordinary firmness from engaging in protected conduct.

      **2.**      **Causal Link**

Plaintiff clears his first two hurdles but cannot overcome the third.  To demonstrate a

causal link, he must show that Defendants took an adverse action against him "motivated at least

in part" by his protected conduct.  *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998); *see*

*Josephson*, 115 F.4th 787 (citing *Bloch*, 156 F.3d at 678); *DeLanis*, 160 F.4th at 742 ("And he

must allege a 'causal link' between his protected speech and the adverse action." (citing

*Cunningham*, 41 F.4th at 541)).  In other words, Plaintiff must show that Brown and May failed

to pay him for contracted services "in response to" his comments at the June 12, 2024, County

Commissioner's meeting.  *See Stockdale v. Helper*, 979 F.3d 498, 506 (6th Cir. 2020).  For the

reasons below, the Court finds that he fails to make an adequate showing here.

Contrast this case with the recent case, *DeLanis*, in which the Sixth Circuit held the

alleged facts supported a causal link.  The plaintiff there alleged that a city official named

Mendes pressured a law firm into firing him in retaliation for protected speech.  *DeLanis*, 160

F.4th at 743.  The Sixth Circuit found—at the motion-to-dismiss stage—that qualified immunity

did not apply to Mendes.  *Id.*  That was because the complaint connected Mendes' statements to

the pressure on the law firm by "alleging that the [] officials who threatened [the firm] 'included'

Mendes."  *Id.*; *see id.* at 744 ("Based on the statements of Baker Donelson's general counsel,

DeLanis alleged that the Nashville 'officials' who spoke to Baker Donelson 'includ[ed]' Mendes

and that other officials acted 'at the direction of or in concert with Mendes.'").

Compared to *Delanis*, Plaintiff's allegations against Brown do not show the connection.

In response to Plaintiff's comments at the June 12, 2024, Commissioner's meeting, Deputy

Director Green responded that everything Plaintiff said was a "lie" and that individuals who

make such statement "should be held accountable."  (ECF No. 61, PageID 624.)  Plaintiff claims

that Brown is Deputy Director Green's direct supervisor.[5]  (*Id.* at PageID 622.)  After the County

Commission meeting, Plaintiff tried unsuccessfully to contact Brown several times about his

invoice.  (*Id.* at PageID 625–26.)  So he complained to the District Attorney and a Shelby County

Commissioner.  (*Id.*)

He later learned from the Tennessee Department of Finance and Administration that his

invoice "could not be processed without a previously submitted accrual liability form."  (*Id.* at

PageID 626.)  And he alleges that his FOIA request revealed "a concerted effort by Defendants

to hide its reckless failure to submit necessary documents for payment to Plaintiff under the

contract."  (*Id.* at PageID 626–27.)  What is more, Brown had the "final policy-making decision

---

[5] Defendants note that Green is actually Brown's supervisor.  (ECF No. 84 at PageID 738.)

on renewing contracts" and "was the final authority in the submission of proper documentation

to obtain approval for payments earned by County contractors."  (*Id.* at PageID 629.)

What is missing from all these facts is any plausible connection that Brown may have to

Plaintiff's protected speech other than being Deputy Director Green's supervisor.  (*See also* ECF

No. 83 at PageID 733 (stating that Brown was Green's supervisor, and that Green said

"individuals like Plaintiff should be held accountable for their words").)  Keep in mind that

Deputy Director Green is not a named party in this lawsuit.[6]

But there are more problems with the Complaint.  Unlike *Delanis*, Plaintiff has not

alleged that Brown was even aware of his comments at the Commissioner's meeting.  Nor has he

alleged that Brown opposed his speech in any way.  To be sure, Plaintiff has alleged a

connection between Brown's actions or inactions and Plaintiff's alleged nonpayment.  But he has

not plausibly alleged that Brown was motivated by Plaintiff's comments at the County

Commission meeting.  *Cf. Nieves*, 587 U.S. at 398 (summary judgment) ("It is not enough to

show that an official acted with a retaliatory motive and that the plaintiff was injured—the

motive must *cause* the injury.").

The closeness in time here does not alter this conclusion.  Sometimes the proximity in

time between the protected activity and the adverse action may be the only circumstantial

evidence needed to plausibly allege a causal connection.  *Dye v. Off. of the Racing Comm'n*, 702

F.3d 286, 305 (6th Cir. 2012); *see Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 632 (6th Cir.

---

[6] As much as Plaintiff seeks to hold Brown liable for Deputy Director Green's words, vicarious
liability is not a plausible § 1983 legal theory.  *See, e.g. Everson v. Leis*, 556 F.3d 484, 495 (6th
Cir. 2009) (explaining that the plaintiff erred in "attempt[ing] to conflate a § 1983 claim of
individual supervisory liability with a claim of municipal liability").

2013) (quoting *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010)).  But the cases supporting

that concept still connect the individual defendant to the adverse action.

For example, in *Dye*, the plaintiff's protected activity occurred when he spoke with the

defendant.  702 F.3d at 305.  And it was the defendant who then took the adverse action against

the plaintiff.  *Id.*  Because that adverse action occurred within two months of the protected

activity, the Sixth Circuit held that the timing was enough to establish causation.  The same rings

true in *Paige*.  There, the plaintiff's protected speech occurred in the defendant's presence.  614

F.3d at 282–83 ("Coyner also had a visibly negative reaction to Paige's critical comments during

the Port Authority hearing.").  Again that same defendant allegedly took the adverse action.  *Id.*

So, in a summary-judgment posture, the Sixth Circuit found that the "[t]emporal proximity

between the protected conduct and the adverse action" was enough to show causation.  *Id.* at

283.

In contrast, nothing here connects Brown's control of Plaintiff's nonpayment to his

protected speech.  For example, Plaintiff has not alleged that Brown attended the County

Commission meeting.  And although Plaintiff spoke at a public meeting about two weeks before

demanding payment, the Complaint contains no allegations that Brown even knew Plaintiff

spoke at the meeting.  Because of that, the Court finds that Plaintiff has not plausibly alleged

Brown's actions were "motivated at least in part" by his speech at the Commissioner's meeting.

That leaves Defendant Terrice May.  The allegations related to Ms. May are sparse.

Plaintiff alleges that May is the Shelby County Health Department Administrator.  (ECF No. 61

at PageID 622.)  And that she "was a designated contact in the contract between Plaintiff and

Defendant."  (*Id.*)  On July 2, 2024, he mailed his invoice to her "demanding payment and

reimbursement of expenses according to the terms of the contract."  (ECF No. 61 at PageID

13

624.)  Based on the lack of payment, he alleges that May "was complicit in Brown's wrongdoing

and failed to submit documents timely."  (*Id.* at PageID 629.)  This too fails causation.  Just

because May is a point of contact for the contract does not show a causal link for retaliation

under these facts.

Although "it is generally inappropriate for a district court to grant a 12(b)(6) motion to

dismiss on the basis of qualified immunity," *Chrestman*, 156 F.4th at 701, a plaintiff must still

plausibly allege a defendant took an adverse action in response to protected speech.  *See*

*DeLanis*, 160 F.4th at 743.  Plaintiff has failed to do this here.  So for the reasons above, the

Court **DISMISSES** Plaintiff's § 1983 claim against Defendants Brown and May in their

individual capacities.[7]

### B.    *Monell* **Liability**

Section 1983 liability also applies to municipalities through what is called *Monell*

liability.[8]  *Monell*, 436 U.S. at 694.  To state a claim under *Monell*, a plaintiff must plausibly

allege that (1) his "injuries arose from an unconstitutional act," which (2) was caused by a

government "policy or custom."  *Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130

---

[7] To state a § 1983 claim, a plaintiff must allege that a defendant acted under the color of state law and deprived him a constitutional or federal right.  *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).  Because has not plausibly alleged that Brown retaliated against Plaintiff for exercising his First Amendment right, his § 1983 against Brown for intentional infliction of emotional distress claim also fails.  (*See* ECF No. 83 at PageID 734 (clarifying that his intentional infliction of emotional distress claim is brought only against Brown under § 1983)).

[8] Plaintiff also sued Brown and May in their official capacities.  But when, as here, "the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).  So before moving on, the Court **DISMISSES** the claims against Brown and May in their official capacities.  *See, e.g.*, *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 675 (M.D. Tenn. 2020), *aff'd*, No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) (explaining that official-capacity claims are redundant).

F.4th 593, 599 (6th Cir. 2025) (citations omitted).  But a governmental entity is not liable under

*Monell* "*solely* because it employs a tortfeasor."  *Hall v. Navarre*, 118 F.4th 749, 757 (6th Cir.

2024) (citation omitted).  A plaintiff must instead show that the municipality "was the moving

force behind the injury alleged."  *Id.* (citations and internal quotation marks omitted).  One way

to allege an unconstitutional policy or custom is by showing "the existence of a custom of

tolerance or acquiescence of federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478

(6th Cir. 2013) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

    With that in mind, Shelby County contends that the Complaint "fail[s] to allege sufficient

facts of a Shelby County policy or custom that caused [Plaintiff's] alleged injuries."  (ECF No.

82-1 at PageID 719.)  Plaintiff offers little substance in response.  Because County officials

failed to respond to his concerns about Brown's alleged retaliation and nonpayment, Plaintiff

claims that his Complaint "demonstrate[s] the existence of a custom or tolerance or acquiescence

to federal rights violations."  (ECF No. 83 at PageID 731.)

    Fatal to Plaintiff's claim is that a single incident is generally not enough to establish a

custom.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a

single incident of unconstitutional activity is not sufficient to impose liability under *Monell*,

unless proof of the incident includes proof that it was caused by an existing, unconstitutional

municipal policy, which policy can be attributed to a municipal policymaker."); *see also Stewart*

*v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019).  And even if Plaintiff seeks to

attribute Brown's actions to Shelby County, Plaintiff "may not rely on a theory of respondeat

superior alone."  *Hall*, 118 F.4th at 757 (citation omitted); *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 122 (1992) ("The city is not vicariously liable under § 1983 for the

constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is

15

the wrongdoer."). For this reason, the Sixth Circuit has "never found notice of a pattern of

misconduct (or the pattern itself) solely from the mistreatment of the plaintiff." *Nouri v. Cnty. of

Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015).

Even still, Plaintiff could show an unconstitutional policy or custom by pointing to

"'enough similar incidents' sufficient to put officials on notice that persons 'would be subject to

constitutional deprivation' if the problem is not remedied." *Alsaada v. City of Columbus*, 536 F.

Supp. 3d 216, 272 (S.D. Ohio 2021), *modified*, No. 20-3431, 2021 WL 3375834 (S.D. Ohio June

25, 2021) (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989)). But again,

Plaintiff has not alleged as much here—he only pleads facts related to his own experience in

seeking payment under a single contract. Because "[h]e has only his own experience on which

to rely, []that is not enough to state a claim against the County." *Nouri*, 615 F. App'x at 296.

For these reasons, the Court **DISMISSES** Plaintiff's *Monell* claim.

### III.    Breach of Contract

Because Plaintiff has no remaining federal claims, the Court will not exercise

supplemental jurisdiction over his pendant state claim of breach of contract. *See, e.g.*, *Stanley v.

W. Michigan Univ.*, 105 F.4th 856, 867 (6th Cir. 2024). The Court therefore **DISMISSES

WITHOUT PREJUDICE** Plaintiff's breach of contract claim.

### CONCLUSION

This case is about why Defendants allegedly breached a contract with Plaintiff. But

Plaintiff has not plausibly alleged that Brown or May took part in breaching that contract

because of his free speech. Nor has he connected the breach to an unconstitutional County

policy or custom. For these reasons, the Court **GRANTS** Defendants' Motion for Partial

Judgment on the Pleadings, **DISMISSES** Plaintiff's § 1983 claims **WITH PREJUDICE**, and

**DISMISSES** Plaintiff's breach of contract claim **WITHOUT PREJUDICE**.

      **SO ORDERED**, this 26th day of January, 2026.

                                          s/Thomas L. Parker
                                          THOMAS L. PARKER
                                          UNITED STATES DISTRICT JUDGE